## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and STATE OF ILLINOIS, | ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CENTREVILLE CITIZENS FOR CHANGE, | ) ) | Case No. 3:24-cv-2591-DWD |
| | ) | |
| Intervenor-Plaintiff | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY OF CAHOKIA HEIGHTS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Before the Court is Intervenor-Plaintiff's Motion to Intervene under Federal Rule of Civil Procedure 24 and § 1365(b)(1)(B) of the Clean Water Act ("CWA"), 33 U.S.C. § 1365(b)(1)(B). (Docs. 15 & 16).[1] Plaintiffs and Defendant filed Responses to, and Intervenor-Plaintiff filed a Reply in Support of, that Motion to Intervene. (Docs. 22 & 24). As explained below, the Motion to Intervene is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

Plaintiffs filed this action with a Complaint, alleging two claims for relief, under § 309 of the CWA, 33 U.S.C. § 1319, and § 42(d) and (e) of the Illinois Environmental

---

[1]With its filings, Intervenor-Plaintiff also filed a Proposed Complaint in Intervention. (Doc. 15-1).

Protection Act ("IEPA"), 415 ILCS 5/42(d) and (e). (Doc. 1). In sum, Plaintiffs allege, "[f]or many years, Defendant has illegally discharged sewage and other pollutants from its sewage collection system to the waterways in and around Cahokia Heights." (Doc. 1, pgs. 1, 9-11).[2] Plaintiffs request permanent injunctive relief and civil penalties. (Doc. 1, pg. 2).

Shortly thereafter, the Court entered orders relating to scheduling, discovery, and case management. (Docs. 7, 8, 9, 11). However, the parties subsequently informed the Court that an agreement was reached on a Proposed Consent Decree. (Docs. 1-1 to 1-13; 11). As such, the Court terminated a Scheduling Conference and the requirement that the parties meet, confer, and submit a Joint Report on scheduling and discovery. (Doc. 11).

Intervenor-Plaintiff's Motion to Intervene was filed on January 21, 2025. (Docs. 15 & 16). Intervenor-Plaintiff initially indicates that Plaintiffs do not oppose the intervention; however, they seek to limit the scope of Intervenor-Plaintiff's intervention. (Doc. 15, pg. 1). The parties engaged in negotiations on that issue, but they were unable to reach an agreement. (Doc. 15, pg. 1). Intervenor-Plaintiff also represents that Defendant, for its part, opposes its intervention in this action. (Doc. 15, pg. 1).

As a substantive matter, Intervenor-Plaintiff argues its members have been adversely impacted by the "indignity and unacceptable public health hazard" caused by Defendant. (Doc. 16, pgs. 7-9). As "the leading entity in the effort both to hold [Defendant] accountable…and to secure lasting repairs to its sewage system," Intervenor-Plaintiff

---

[2] Plaintiffs allege Defendant's sewer system extends over approximately sixteen square miles and serves approximately 21,000 residents. (Doc. 1, pg. 9). The sever system consists of approximately ninety miles of gravity sewers, four miles of force mains, over 2,000 manholes, and 69 lift stations. (Doc. 1, pg. 9).

claims a right of intervention under Rule 24(a)(1) and (2) or, alternatively, permissive intervention under Rule 24(b), "to ensure that its interests are protected and that appropriate remedies are pursued and implemented." (Doc. 16, pgs. 7, 9-12).

More specifically, under Rule 24(a)(1) and § 1365(b)(1)(B), Intervenor-Plaintiff asserts "an unconditional statutory right to intervene" because its Motion to Intervene is timely and "[n]o citizen suit may be commenced for [CWA] violations where the EPA or State 'has commenced and is diligently prosecuting a civil…action' to require compliance with [CWA] standards, limitations, or orders, 'but in any such action in a court of the United States any citizen may intervene as a matter of right.' " (Doc. 16, pgs. 13-17) (citing 33 U.S.C. § 1365(b)(1)(B)) (Emphasis in original omitted.). Intervenor-Plaintiff argues it is a citizen, as defined by § 1365(g) of the CWA, 33 U.S.C. § 1365(g), and this action would require compliance with a standard limitation, or order following the unlawful sewage pollution that "has harmed and will continue to harm [its] members." (Doc. 16, pg. 15).

Intervenor-Plaintiff also claims a right to intervene under Rule 24(a)(2), which pertains to an intervenor who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." (Doc. 16, pgs. 17-25). Intervenor-Plaintiff argues Rule 24(a)(2) is satisfied due to the following: its Motion to Intervene is timely; it has property, health, and recreational interests related to the subject matter of this action, *i.e.*, Defendant's unlawful sewage pollution; those unique interests could be impaired by the disposition of this action, as the terms of a consent decree or ruling will

determine what steps Defendant must take to end its sewage discharges in Intervenor-Plaintiff's members' neighborhoods, will directly impact those members' interests in resolving ongoing health and property harms, and could impact Intervenor-Plaintiff's pursuit of claims under the CWA in another lawsuit, *Centreville Citizens for Change et al. v. City of Cahokia Heights et al.*, No. 21-cv-842-DWD (S.D. Ill.), and in the Proposed Complaint in Intervention; and Intervenor-Plaintiff's interests are inadequately represented by, and/or conflict with those of, Plaintiffs because they represent the "broad economic and fiscal interests" of the public rather than the "specific health, property, and environmental interests" of Intervenor-Plaintiff's members. (Doc. 16, pgs. 18-25).

In the alternative, Intervenor-Plaintiff argues a permissive intervention is warranted under Rule 24(b)(1)(B). (Doc. 16, pgs. 25-26). Intervenor-Plaintiff suggests its claims share common issues of fact and law because of "the same unlawful discharges from [Defendant's] sewer system." (Doc. 16, pg. 26). Further, it argues the Motion to Intervene is timely, there is no chance for delay from the intervention, and there will be no prejudice to the original parties since there are "overlapping facts" and Defendant is "already familiar with [Intervenor-Plaintiff's] positions and interests." (Doc. 16, pg. 26).

Plaintiffs' Response to the Motion to Intervene was filed on February 4, 2025. (Doc. 22). Plaintiffs initially acknowledge, despite the Proposed Consent Decree agreed upon by Plaintiffs and Defendant, "City residents who have experienced the effects of the City's non-compliance wish to be heard." (Doc. 22, pg. 5). For that reason, Plaintiffs do not oppose Intervenor-Plaintiff's intervention. (Doc. 22, pg. 5). However, Plaintiffs argue such an intervention should be limited to (1) filing a brief in response to a motion for the

4

entry of the Proposed Consent Decree and, if entered over its objection, to (2) appealing the entry of the Proposed Consent Decree. (Doc. 22, pgs. 5, 13-16). They argue these "reasonable conditions" on Intervenor-Plaintiff's role, which are permissible in response to the Motion to Intervene, will ensure a fair, efficient, prompt, and effective resolution and administration of this case and any CWA settlement. (Doc. 22, pgs. 5, 12-13). Plaintiffs note they "have engaged extensively with [Intervenor-Plaintiff] over the course of several years, are aware of [its] concerns, and have addressed them in the proposed Consent Decree where feasible and appropriate." (Doc. 22, pg. 5). And, according to Plaintiffs, "the formal public comment process," which was available to Intervenor-Plaintiff and its members, "is the customary path for citizens to share their views." (Doc. 22, pgs. 5, 16).

In contrast, Plaintiffs argue allowing Intervenor-Plaintiff to assume a "wide-ranging role" in this action—*e.g.*, to engage in discovery, to reopen negotiations on the Proposed Consent Decree, and to act as an enforcement agency under any consent decree—would unnecessarily delay and frustrate the implementation and effective administration of a Consent Decree. (Doc. 22, pgs. 14, 17-22). Plaintiffs maintain this is especially true where Intervenor-Plaintiff, which "is largely composed of residents from the portion of the City of Cahokia Heights that was formerly Centreville," "has already taken discovery on the same issues in its own case." (Doc. 22, pgs. 18, 21). Plaintiffs emphasize, once they seek the entry of the Proposed Consent Decree, which was the product of voluntary "give-and-take" in negotiations with Defendant and "informed by [Intervenor-Plaintiff]'s views via multiple meetings with the group and consideration of its extensive prior written comments," the sole question for the Court will be whether the

Proposed Consent Decree is lawful, fair, reasonable, and adequate as a "fix for the entire City sewer system and…[the] problems faced throughout the City." (Doc. 22, pgs. 14-19, 22) (quoting *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985)).

Defendant also filed a Response on February 4, 2025. (Doc. 24). It argues the filing of the Motion to Intervene, at the last hour, "is a blatant attempt…to circumvent an order staying related litigation against the City" and to "use this matter as an avenue to pursue its alleged claims against the City." (Doc. 24, pgs. 6, 12-13) (citing *Centreville Citizens for Change*, No. 21-cv-842-DWD, Doc. 151 (S.D. Ill. Jan. 5, 2024)). Defendant notes Intervenor-Plaintiff's proposed claims and arguments in this case are based entirely on the same facts and claims alleged in its other stayed litigation before the Court. (Doc. 24, pgs. 12-13). For these reasons, Defendant argues Intervenor-Plaintiff cannot be allowed to unfairly prejudice the original parties to this action by holding the Proposed Consent Decree hostage, as that agreement required the expenditure of taxpayer dollars and was "the result of hard work and [good faith] negotiations spanning over many years." (Doc. 24, pgs. 7, 12-13). This is especially true where, according to Defendant, Intervenor-Plaintiff had time to raise concerns about the Proposed Consent Decree. (Doc. 24, pgs. 7, 19).

On the merits, Defendant responds that Intervenor-Plaintiff lacks standing to intervene under Rule 24(a)(1) and failed to satisfy the requirements of Rule 24(a)(2) and (b). (Doc. 24, pgs. 6, 12-24). As to standing and Rule 24(a)(1), Defendant argues Intervenor-Plaintiff failed to allege its members could independently bring a private CWA enforcement action, in the first instance, under § 1365(a)(1). (Doc. 24, pgs. 13-17). For example, Defendant argues Intervenor-Plaintiff's "Proposed Complaint is devoid of

any allegation that any…member uses or enjoys the aesthetic or recreational value of any of the listed bodies of water, or that any such use or enjoyment…is impacted by the City's alleged discharges of pollutants to these waterbodies without a permit." (Doc. 24, pg. 16). Rather, in Defendant's view, Intervenor-Plaintiff's claims "largely focus on its members' use and enjoyment of their individual properties[] without any relationship or reference to any" waters of the United States. (Doc. 24, pgs. 16-17) (Emphasis in original omitted.).

Further, in relation to Rule 24(a)(2), Defendant argues Intervenor-Plaintiff's interests will not be impaired if an intervention is denied, as those interests are adequately represented by Plaintiffs. (Doc. 24, pgs. 17-20). Indeed, Defendant argues it is presumed that Plaintiffs will adequately represent Intervenor-Plaintiff's interests. (Doc. 24, pg. 20). Defendant notes, as evidenced by its other stayed litigation before the Court, Intervenor-Plaintiff "has multiple legal avenues in which to pursue its interests." (Doc. 24, pg. 18). It also allegedly "had more opportunities to provide comments on the Consent Decree than any other member of the public," and those comments resulted in Plaintiffs and Defendant "negotiat[ing] changes to the Consent Decree." (Doc. 24, pgs. 19-20). Defendant further notes, like the rest of the public, Intervenor-Plaintiff could "ensure its voice [wa]s heard" with comments during the formal comment period. (Doc. 24, pg. 19).

Finally, with respect to Rule 24(b), Defendant argues the requested intervention will "unfairly and permanently prejudice the existing parties." (Doc. 24, pg. 21). As alluded to above, Defendant believes an intervention by Intervenor-Plaintiff will significantly delay, derail, and/or threaten to negate the "years of hard work and numerous meetings between the parties, at the expense of federal, state, and local

taxpayers," that culminated in a Proposed Consent Decree. (Doc. 24, pgs. 21-22). In contrast, Defendant suggests a denial of the Motion to Intervene will not prejudice Intervenor-Plaintiff because "[n]o party…is in a better position to assure compliance with EPA's own policies than EPA itself," mere disagreements related to the agreed upon remedies or the timetable for their implementation are not valid interests supporting an intervention under Rule 24(b), and Intervenor-Plaintiff has "alternative forums to address concerns relating to the allegations in the Complaint." (Doc. 24, pgs. 23-24). For the above reasons, Defendant seeks a denial of the Motion to Intervene or, alternatively, significant limitations on Intervenor-Plaintiff's role in this action. (Doc. 24, pgs. 7, 24-25).

Intervenor-Plaintiff filed a Reply in Support of the Motion to Intervene on February 11, 2025. (Doc. 26). Intervenor-Plaintiff affirms its standing and the applicability of Rule 24(a)(1) by arguing its "members 'use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity,' " *i.e.*, "[t]hey are harmed by Defendant City's unlawful discharge of raw sewage as it flows from the point source on North 82nd Street through waterways in front of their homes and properties…on its way to its ultimate deposition in the Mississippi River." (Doc. 26, pg. 2). Despite Defendant's contrary argument, Intervenor-Plaintiff states "neither Article III nor the CWA requires that the injury be to a citizen's use of the impacted water body," as it suffices that the discharge of waste violates the CWA. (Doc. 26, pg. 3). It also notes Defendant "never once challenged [its] standing to bring CWA claims based on the North 82nd sewage discharge in the stayed litigation (which is also at issue here), despite filing four separate motions to dismiss." (Doc. 26, pg. 3 n. 1).

Further, Intervenor-Plaintiff replies that the other stayed litigation before the Court "is not a realistic alternative to participation in the present proceeding because [a] resolution of the City's CWA violations through the Consent Decree likely will impede if not eliminate [Intervenor-Plaintiff's] CWA claims on the same events." (Doc. 26, pg. 4). Likewise, Intervenor-Plaintiff argues the public comment process was an insufficient substitute for intervention, and Defendant "embellishes the purportedly enhanced opportunities for [Intervenor-Plaintiff] to comment on the proposed Consent Decree." (Doc. 26, pg. 4). According to Intervenor-Plaintiff, the meetings attended by Plaintiffs were "perfunctory and performative," as counsel did not answer questions or respond to comments. (Doc. 26, pg. 4). Since Plaintiffs represent the general public, rather than "the specific interests of a particular community," Intervenor-Plaintiff suggests "[t]he interests of the parties in this case are at odds with [its] interests as demonstrated by the Consent Decree's failure to provide adequate or timely relief to [its] members." (Doc. 26, pg. 4).

Lastly, Intervenor-Plaintiff suggests it would be premature for the Court to impose "upfront limits" on its intervention. (Doc. 26, pg. 6). It argues neither Plaintiffs nor Defendant have shown it will disrupt the efficiency of the proceeding. (Doc. 26, pg. 6). As of this date, Intervenor-Plaintiff notes it has not requested discovery, a hearing, or other actions that interfere with a resolution of this case. (Doc. 26, pg. 6). Intervenor-Plaintiff states it "has no interest in delay or inefficiency," as "[e]very day of delay is another day the [Defendant]'s unlawful sewage discharges harm [its] members." (Doc. 26, pg. 6).

Having outlined the background of the case and the parties' present arguments, the Court resolves Intervenor-Plaintiff's Motion to Intervene in the section below.

## II. ANALYSIS

Under Rule 24(a)(1), the Court, upon receiving a timely motion from a prospective intervenor, "must permit anyone to intervene who…is given an unconditional right to intervene by a federal statute." Fed. R. Civ. P. 24(a)(1). Obviously, in this case, the CWA is the federal statute at issue. Section 1365(a)(1) of that federal statute provides as follows:

> Except as provided in subsection (b) of this section and section 1319(g)(6) of this title, any citizen may commence a civil action on his own behalf —
>
> (1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation[.]

…

> The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation, or such an order…and to apply any appropriate civil penalties under section 1319(d) of this title.

33 U.S.C. § 1365(a)(1).

Intervenor-Plaintiff specifically invokes § 1365(b)(1)(B), which further states:

> No action may be commenced…under subsection (a)(1) of this section…if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States…to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.

*Id*. § 1365(b)(1)(B).

In addition, under Rule 24(a)(2), the Court, upon receipt of a timely motion, "must permit anyone to intervene who…claims an interest relating to the property or

transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). "[A] proposed intervenor needs to meet four elements: '(1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties to the action.' " *Planned Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793, 797 (7th Cir. 2019) (quoting *State v. City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019)); *accord Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 773 (7th Cir. 2007).

    To satisfy these elements, a prospective intervenor must have "a 'direct, significant[,] and legally protectable interest" that is "unique," *i.e.*, that is "based on a right that belongs to the proposed intervenor rather than to an existing party in the suit." *Bost v. Illinois State Bd. of Elections*, 75 F.4th 682, 686-87 (7th Cir. 2023) (quoting *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985); *Wisconsin Educ. Ass'n Council v. Walker*, 705 F.3d 640, 658 (7th Cir. 2013); citing *Planned Parenthood of Wisconsin, Inc.*, 942 F.3d at 798). This is not to say, however, that the right "belongs *only* to the proposed intervenor, or even…that [it] belongs to the proposed intervenor *and not to* the existing party." *Id.* at 687 (Emphasis in original). The interest must merely belong to the prospective intervenor "in its own right" rather than as a derivative of an existing party's right. *Id.* (citing *Planned Parenthood of Wisconsin, Inc.*, 942 F.3d at 806 (Sykes, J., concurring)). Further, an interest is impaired if a decision on a legal question would practically foreclose the rights of the prospective intervenor in subsequent proceedings. *Shea v. Angulo*, 19 F.3d 343, 347

11

7th Cir. 1994); *accord Clorox Co. v. S.C.*, 627 F. Supp. 2d 954, 961-62 (7th Cir. 2009).

And, notably, on tests for the adequacy of representation, the Seventh Circuit stated:

> Our default rule, which applies when there is no notable relationship between the existing party and the applicant for intervention, is a lenient one: the applicant for intervention need only show "that representation of his interest by the existing party may be inadequate." We apply an intermediate standard if "the prospective intervenor and the named party have the same goal." This is a higher bar, under which the applicant can only show inadequate representation by pointing to "some conflict" between itself and the existing party. And finally, our strictest test applies "when the representative party is a governmental body charged by law with protecting the interests of the proposed intervenors." In those cases, because the existing party is legally required to represent the interests of the would-be intervenor, we presume it is an "adequate representative unless there is a showing of gross negligence or bad faith."

*Bost*, 75 F.4th at 688 (quoting *Planned Parenthood of Wisconsin, Inc.*, 942 F.3d at 799) (Emphasis in original omitted.) (Cleaned up.); *accord Ligas ex rel. Foster*, 478 F.3d at 774.

Finally, the Court, upon receiving a timely motion from a prospective intervenor, "may permit anyone to intervene who…has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The decision of whether to allow a permissive intervention is "highly discretionary" because, " '[u]nlike the more mechanical elements of intervention as of right, it leaves the district court with ample authority to manage the litigation.' " *Bost*, 75 F.4th at 690-91 (quoting *Planned Parenthood of Wisconsin, Inc.*, 942 F.3d at 803); *see also Kluge v. Brownsburg Cmty. Sch. Corp.*, 432 F. Supp. 3d 823, 858 (S.D. Ind. 2020) ("The decision whether to permit intervention is 'wholly discretionary.' "). The Court is only required to consider the undue delay and prejudice, caused by a permissive intervention, to the original parties. *Bost*, 75 F.4th at 691 (citing *Planned Parenthood of Wisconsin, Inc.*, 942 F.3d at 803); Fed. R. Civ. P. 24(b)(3).

Generally, a party granted leave to intervene, as of right under Rule 24(a), "has the 'full rights of a party.' " *See Planned Parenthood of Wisconsin, Inc.*, 942 F.3d at 797 (quoting *Aurora Loan Servs., Inc. v. Craddieth*, 442 F.3d 1018, 1022 (7th Cir. 2006)). However, an intervention as of right under Rule 24(a), like an intervention with permission under Rule 24(b), "may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings." Fed. R. Civ. P. 24, 1966 Advisory Committee Notes; *see also Planned Parenthood of Wisconsin, Inc.*, 942 F.3d at 803 ("The court can even place conditions on the scope of permissive intervention, allowing more voices to be heard without overcomplicating the case with additional claims, defenses, discovery, and conflicting positions."); *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 383 (1987) (Brennan, J., concurring) (citing the 1966 Advisory Committee Notes to Rule 24 for the notion that "restrictions on participation may also be placed on an intervenor of right and on an original party."); *Beauregard, Inc. v. Sword Servs. L.L.C.*, 107 F.3d 351, 352-53 (5th Cir. 1997) (stating, while citing the 1966 Advisory Committee Notes to Rule 24, "[a]lthough not without some controversy, it is now a firmly established principle that reasonable conditions may be imposed even upon one who intervenes as of right"); *U.S. v. City of Detroit*, 712 F.3d 925, 931-32 (6th Cir. 2013) (stating, while citing the 1966 Advisory Committee Notes to Rule 24, "courts are not faced with an all-or-nothing choice between grant or denial: Rule 24 also provides for limited-in-scope intervention"); *U.S. v. Albert Inv. Co., Inc.*, 585 F.3d 1386, 1396 (10th Cir. 2009) ("[I]intervention as of right 'may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the

proceedings.' "); *U.S. v. S. Florida Water Mgmt. Dist.*, 922 F.2d 704, 710 (11th Cir. 1991) ("On remand, the District Court may choose to condition their intervention [as of right] in this case on such terms as will be consistent with the fair, prompt conduct of this litigation."); *In re Discovery Zone Sec. Litig.*, 181 F.R.D. 582, 601 (N.D. Ill. 1998) ("It is axiomatic that courts may put limitations on a party's ability to intervene permissively under Rule 24(b)(2). However, courts have also exercised discretion in limiting intervention as of right under 24(a)(2)."); *Forest Cnty. Potawatomi Cmty. v. U.S.*, 317 F.R.D. 6, 15 (D. D.C. 2016) (acknowledging, in the context of Rule 24(a), "[e]ven where the Court concludes that intervention as a matter of right is appropriate, its inquiry is not necessarily at an end: district courts may impose appropriate conditions or restrictions upon the intervenor's participation in the action"). When discussing the imposition of conditions or restrictions on intervention, the District of Columbia noted: "[t]he inquiry is necessarily context-specific, and the conditions should be tailored to fit the needs of the particular litigation, the parties, and the district court. In the past, courts have barred intervenors from injecting collateral issues into the litigation." *Forest Cnty. Potawatomi Cmty.*, 317 F.R.D. at 15; *see also Vinson v. Washington Gas Light Co.*, 321 U.S. 489, 498 (1944) ("[O]ne of the most usual procedural rules is that an intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding.").

Here, while Plaintiffs and Defendant do not contest the timeliness of the Motion to Intervene, the Court notes this case was initiated with a Complaint on December 10, 2024, and no matter of substance was decided before the filing of the Motion to Intervene

on January 21, 2025. (Docs. 1 & 15). Also, the Court has not yet been asked to enter Plaintiffs' and Defendant's Proposed Consent Decree. And, when Intervenor-Plaintiff filed its Motion to Intervene, the Proposed Consent Decree was still the subject of public comment. (Doc. 11). For these reasons, the Court finds Intervenor-Plaintiff's Motion to Intervene is timely under Rule 24(a)(1), (a)(2), and (b)(1)(B). *See Cook Cnty, Illinois v. Texas*, 37 F.4th 1335, 1341 (7th Cir. 2022) (outlining the four considerations for evaluating the timeliness of a motion to intervene under Rule 24(a) and (b), including the length of time that the prospective intervenor knew or should have known of its interest in the case, the prejudice caused to the original parties by any delay, the prejudice caused to the intervenor by a denial of the motion to intervene, and any other unusual circumstances).

Further, in the context of Rule 24(a)(1), § 1365(a)(1) and (b)(1)(B), and the unlawful sewage pollution that has allegedly harmed Intervenor-Plaintiff's members, Defendant is obviously "alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation." *See* 33 U.S.C. § 1365(a)(1); (Docs. 1, generally; 15-1, generally; 16, pg. 15; 24, pg. 14). And, while "[n]o action may be commenced…under subsection (a)(1)…if the Administrator or State has commenced and is diligently prosecuting a civil…action…to require compliance with the standard, limitation, or order," as is the case here, it appears to the Court that Intervenor-Plaintiff may, as a "citizen," "intervene as a matter of right." *Id*. § 1365(b)(1)(B). Notably, no party contests that Intervenor-Plaintiff is a "citizen." *See id*. § 1365(b)(1)(B), (g) ("[T]he term 'citizen' means a person or

15

persons having an interest which is or may be adversely affected."). Therefore, the Court concludes Intervenor-Plaintiff can intervene under Rule 24(a)(1) and § 1365(b)(1)(B).

When so finding, the Court notes its disagreement with Defendant that Intervenor-Plaintiff merely seeks to "circumvent" the other stayed litigation and lacks standing under § 1365(a)(1). (Doc. 24, pgs. 6, 12-17).[3] It is telling, as Intervenor-Plaintiff argues, that Defendant never raised the standing issue in the Motions to Dismiss filed in that other stayed litigation, despite the fact that Intervenor-Plaintiff invoked, *inter alia*, § 1365(a). *See Centreville Citizens for Change*, No. 21-cv-842-DWD, Docs. 1, 12, 21, 53, 59, 61, 124, generally; *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (noting "[a]n association has standing to bring suit on behalf of its members when," *inter alia*, "its members would otherwise have standing to sue in their own right").[4] The Court further notes Defendant makes that argument while itself conceding Plaintiff's proposed claims and arguments are based entirely on the same facts and claims alleged in the other stayed litigation. (Doc. 24, pgs. 12-17). In any event, the Court believes Intervenor-Plaintiff has shown standing under § 1365(a)(1) from the unlawful sewage pollution around their homes and "to the Mississippi River and its tributaries," *e.g.*, the allegations that raw sewage and debris have backed up or overflowed into members' yards, the flooding and raw sewage create a stench and are exacerbated by a lack of

---

[3]The Court notes Defendant, when challenging Intervenor-Plaintiff's standing, only disputes the sufficiency of Intervenor-Plaintiff's alleged injury, which is one element of standing. (Doc. 24, pgs. 15-17).

[4]The Court notes, however, Defendant generally alleged standing as an affirmative defense to Intervenor-Plaintiff's claims in its Answer in the other stayed litigation, stating: "Some or all of Plaintiffs' claims are barred because some or all plaintiffs have no standing because they suffered no injury or damages." *See Centreville Citizens for Change*, No. 21-cv-842-DWD, Doc. 102, pg. 162 (S.D. Ill. Dec. 27, 2022).

maintenance to canals and ditches, members no longer fish and eat catch from Grand Marais Lake or enjoy the outdoors or gardening due to the effects of the raw sewage issues, the years of flooding and raw sewage issues have shifted the foundation of and caused the need for repairs to a member's home, and/or members have mold issues or issues using their bathrooms. *See Laidlaw*, 528 U.S. at 173, 181-84 (holding, in a case arising under § 1365(a), the members' sworn statements adequately documented an injury because they averred that they used the affected area and were persons for whom the aesthetic, recreational, and economic values of the area were lessened by the challenged activity, *i.e.*, the members averred that they lived .25 to 2 miles from the defendant's facility, occasionally drove over the river at issue and it "looked and smelled" polluted due to the discharges from the defendant's facility, would like to fish or engage in other activities "in or near" the portion of the river that was downstream from the defendant's facility, desired to purchase a home "near the river," and had a lower value than similar homes located farther from the defendant's facility); *Hoosier Env't Council v. Nat. Prairie Indiana Farmland Holdings, LLC*, 564 F. Supp. 3d 683, 699 (N.D. Ind. 2021) (citing *Laidlaw* for the proposition that the injury element of the Article III standing analysis "focuses on the person bringing suit without being limited to an injury to the environment of the offending site"); *Quad Cities Waterkeeper v. Ballegeer*, 84 F. Supp. 3d 848, 853, 861-63 (C.D. Ill. 2015) (applying *Laidlaw*, in a case arising under § 1365(a), to find members sufficiently alleged an injury based on the diminution of aesthetic and recreational interests, where their affidavits alleged, *inter alia*, they "reside in the vicinity of" and fish from the river at issue); *Nat. Res. Def. Council v. Illinois Power Res., LLC*, 202 F. Supp. 3d 859, 869 (C.D. Ill.

2016) ("Members are injured when their interests in a geographic area are impacted by

'reasonable concerns about the effects' of pollution."); *Cannata v. Forest Pres. Dist. of*

*DuPage Cnty.*, No. 6-cv-2196, 2008 WL 4889102, *4 (N.D. Ill. July 24, 2008) (finding, under

the *Laidlaw* "framework, a plaintiff that has been forced to stop using *their own land* as a

result of alleged contamination has suffered an injury under Article III") (Emphasis in

original.); (Docs. 15-1, pgs. 5-6; 16-1, pgs. 1-2; 16-2, pgs. 1-2; 16-3, pgs. 1-3; 16-4, pgs. 1-2).

As a result of the above conclusion, the Court finds it is unnecessary to address

the parties' arguments under Rule 24(a)(2). (Docs. 16, pgs. 17-25; 24, pgs. 17-20). However,

even if an intervention as of right was improper under Rule 24(a)(1) and § 1365(b)(1)(B)

or Rule 24(a)(2), the Court would exercise its discretion to conclude Intervenor-Plaintiff

can permissively intervene under Rule 24(b)(1)(B). *See Bost*, 75 F.4th at 690-91; *Kluge*, 432

F. Supp. 3d at 858. As was already discussed above, Intervenor-Plaintiff "has a

claim…that shares with the main action a common question of law or fact." Fed. R. Civ.

P. 24(b)(1)(B). There is also no threat that Intervenor-Plaintiff's intervention in this action

will cause undue delay or prejudice to Plaintiffs and Defendant, especially in light of the

limitations on intervention that are imposed by the Court below. *See Bost*, 75 F.4th at 691.

Finally, regardless of whether it is a matter of right or with permission, the Court

agrees with Plaintiffs that it is appropriate to limit Intervenor-Plaintiff's intervention.

*See* Fed. R. Civ. P. 24, 1966 Advisory Committee Notes; *Planned Parenthood of Wisconsin,*

*Inc.*, 942 F.3d at 803; *Stringfellow*, 480 U.S. at 383 (Brennan, J., concurring); *Beauregard, Inc.*,

107 F.3d at 352-53; *City of Detroit*, 712 F.3d at 931-32; *Albert Inv. Co., Inc.*, 585 F.3d at 1396;

*S. Florida Water Mgmt. Dist.*, 922 F.2d at 710; *In re Discovery Zone Sec. Litig.*, 181 F.R.D. at

601; *Forest Cnty. Potawatomi Cmty.*, 317 F.R.D. at 15; *Vinson*, 321 U.S. at 498. Specifically, the Court concludes Intervenor-Plaintiff may intervene to (1) file a Response to the forthcoming Motion for the Entry of the Proposed Consent Decree, (2) participate in any hearing on the Motion for the Entry of the Proposed Consent Decree, and (3) if necessary, appeal the Court's ruling on the Motion for the Entry of the Proposed Consent Decree. In doing so, the Court disagrees with the suggestion that such limitations are "premature."

After all, in light of the Proposed Consent Decree, this action is currently postured for a settlement that Plaintiffs and Defendant represent was the product of years of negotiations and immense taxpayer funds. *See In re Discovery Zone Sec. Litig.*, 181 F.R.D. at 598-99, 601 (finding, where the prospective intervenor could properly intervene both as a matter of right and with permission in a case "currently in a settlement posture," it was appropriate to limit the intervention to participating in settlement negotiations, appearing at a fairness hearing on the proposed settlement, and appealing any settlement order of the court). And, although Intervenor-Plaintiff disputes the extent to which they were consulted, it appears undisputed that some effort was made to address its members' concerns and make related revisions to the Proposed Consent Decree. For example, the record reflects that Intervenor-Plaintiff had meetings with the parties and the opportunity, informally and formally, to comment on the Proposed Consent Decree. (Doc. 11). Obviously, the Proposed Consent Decree has not yet been approved and, notwithstanding the above limitations, the Court will hear Intervenor-Plaintiff's concerns about the Proposed Consent Decree, if necessary, in its Response to the forthcoming Motion for the Entry of the Proposed Consent Decree and at any related hearing. *See City*

19

*of Chicago*, 912 F.3d at 987-88 (Seventh Circuit noting, in the context of a prejudice inquiry under Rule 24(a)(2), "existing law already provided protections for the [prospective intervenor]" because, " '[b]efore entering a consent decree[,] the judge must satisfy himself that the decree is consistent with the Constitution and laws, does not undermine the rightful interests of third parties, and is an appropriate commitment of the court's limited resources.' "). Then, if Intervenor-Plaintiff still disputes the propriety of the Court's entry of a Consent Decree, it will have the opportunity to appeal that decision. In light of the other stayed litigation, where Intervenor-Plaintiff has presented broader claims stemming from Defendant's alleged conduct, the aforementioned limitations are proper to ensure the Court's thorough consideration of the Proposed Consent Decree under all of the applicable authorities before it is entered in this case. *See Centreville Citizens for Change*, No. 21-cv-842-DWD, Doc. 59, generally (S.D. Ill. March 10, 2022).

### III. CONCLUSION

As explained above, the Motion to Intervene is **GRANTED in part** and **DENIED in part**. Intervenor-Plaintiff can intervene in this action to (1) file a Response to the forthcoming Motion for the Entry of the Proposed Consent Decree, (2) participate in any hearing on the Motion for the Entry of the Proposed Consent Decree, and (3) if necessary, appeal the Court's ruling on the Motion for the Entry of the Proposed Consent Decree.

**SO ORDERED.**

Dated: April 28, 2025

s/ *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge